UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| LONNIE WHITAKER,<br><br>　　　　Petitioner,<br><br>　v.<br><br>SCOTT PETER FISHER, Warden,<br><br>　　　　Respondent. | Civil No. 10-3595 (RHK/AJB)<br><br><br>**REPORT AND RECOMMENDATION** |

　　　　Lonnie Whitaker, Federal Correctional Institution – Sandstone, Box 1000, Sandstone, Minnesota, 55072, Petitioner, pro se.

　　　　Mary Jo Madigan, Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota, 55415, for Respondent.

ARTHUR J. BOYLAN, United States Magistrate Judge

　　　　This matter is before the undersigned Magistrate Judge of the District Court on the petition of Lonnie Whitaker for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The matter has been fully briefed by the parties, and referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be denied, and this action should be dismissed with prejudice.

**I. BACKGROUND**

　　　　In 2008, Petitioner was convicted in the United States District Court for the Western District of Wisconsin for being a felon in possession of a firearm.  He was sentenced to 41 months in federal prison, to be followed by a three-year term of supervised release.  When Petitioner commenced this action, he was serving his sentence at the Federal Correctional

Institution in Sandstone, Minnesota, ("FCI-Sandstone"), and the parties have not informed the Court of any subsequent change of Petitioner's residence.[1]

With the benefit of expected "good time credit," Petitioner's projected release date, (i.e., the date when he is expected to complete his federal prison term), is July 21, 2011. (Declaration of Ann C. Kinyon, ["Kinyon Decl."], [Docket No. 12], p. 1, ¶ 2.)  Like most federal prisoners, Petitioner is eligible for a transfer to a "Residential Re-entry Center," ("RRC"), or "halfway house," before his final release date.  On or about February 23, 2010, the federal Bureau of Prisons, ("BOP"), determined that Petitioner would be transferred to an RRC 120 to 150 days, (i.e., four or five months), before his projected release date in July 2011.  (Kinyon Decl., Attachment 2.)

Petitioner is dissatisfied with the BOP's plan for transferring him to an RRC.  He believes the BOP did not adequately consider the criteria governing RRC determinations, and that his transfer to an RRC should be expedited.

In June 2010, Petitioner asked a member of the staff at FCI-Sandstone why he was not recommended for twelve months in an RRC, which is the statutory maximum. (Petition, [Docket No. 1], Attachment, p. 2.)  According to Petitioner, the staff member retaliated against him for asking that question, by giving him "an incident report, based on material

---

[1] According to Respondent, Petitioner was scheduled to be transferred to a "halfway house on approximately February 22, 2011." ("Government Response To Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241," [Docket No. 11], p. 8.)  If that transfer did in fact occur, (without notice to the Court), then the current habeas corpus petition presumably would be moot, because Petitioner would have already received all of the relief that he has sought in this action.  However, the present record does not show that Petitioner actually has been transferred to a halfway house.  Furthermore, if Petitioner has been transferred, there still could be a chance, perhaps, that he would return to prison again before he reaches his final release date.  Therefore, the Court has reviewed Petitioner's current habeas corpus claims on the merits.

falsehoods." (Id.)[2]

Petitioner subsequently sought an expedited transfer to an RRC through the BOP's administrative remedy procedures, but that effort was unsuccessful. Respondent presently acknowledges that Petitioner fully exhausted all available administrative remedies. ("Government Response To Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241," [Docket No. 11], p. 11.)

Petitioner then commenced the present action. He is now seeking a writ of habeas corpus that would expedite his transfer to an RRC. The current petition lists several grounds for relief, which are discussed hereafter. However, the Court finds that none of Petitioner's claims is sustainable, and he is not entitled to the relief he is seeking.

## II. DISCUSSION

Federal law directs the BOP to provide appropriate housing for federal prisoners, and gives the BOP broad discretion to fulfill that responsibility as it sees fit. The apposite federal statute provides that –

> "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;

---

[2] Respondent's submissions indicate that Petitioner received the incident report because he repeatedly raised his voice while talking to the staff member, and used inappropriate language, even after he was asked to "calm down." (Kinyon Decl., Attachment 4, pp. 3-5.)

>    (4) any statement by the court that imposed the sentence –
>       (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>       (B) recommending a type of penal or correctional facility as appropriate; and
>    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
>    In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.  The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.  Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person."

18 U.S.C. § 3621(b).

The federal statute that pertains specifically to RRC placement was amended a few years ago by the enactment of the "Second Chance Act of 2007," ("SCA").  The applicable statute, 18 U.S.C. § 3624(c)(1), currently provides as follows:

> "The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility."

This statute clearly authorizes the BOP to assign an inmate to an RRC for any period of time up to the statutory maximum of twelve months.  However, it is equally clear that the BOP retains substantial discretion with regard to RRC assignments.  The exercise of that discretion is effected by 18 U.S.C. § 3624(c)(6), which provides that –

4

> "The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is –
> (A) conducted in a manner consistent with section 3621(b) of this title;
> (B) determined on an individual basis; and
> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community."

The BOP has adopted regulations governing RRC assignments, as required by § 3624(c)(6). Those regulations provide that –

> "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

28 C.F.R. § 570.22.

According to both the statute, (§ 3624(c)(6)), and the regulations, the BOP must determine when an inmate will be assigned to an RRC by conducting an individualized assessment of that inmate's particular circumstances, using the five criteria set forth in 18 U.S.C. § 3621(b), (quoted at pp. 3-4, supra).

In this case, the record shows that the BOP complied with the statutes and the regulations, because it determined when Petitioner should be transferred to an RRC by applying the five criteria listed in § 3621(b). (See Kinyon Decl., Attachment 2, p. 2.) Petitioner does not deny that the BOP applied the prescribed statutory criteria, but he claims that the criteria were not applied "in a non-arbitrary manner," because "the staff of the BOP spent less than five minutes discussing issues like what [Petitioner] likes to eat, what he watches on the television and what he does for exercise." (Petition, Attachment, p. 2, ¶ 7, [emphasis in the original].) Petitioner further claims that the BOP's evaluation of

5

his RRC transfer date was not "done in 'good faith.'" (Memorandum Of Law In Reply To Respondent's Response," [Docket No. 17], p. 2.) However, Petitioner's vague complaints about the quality and integrity of his RRC evaluation do not warrant habeas corpus relief.

Petitioner initially complains that BOP officials did not spend enough time interviewing him, and did not ask him the right questions, when they were determining his RRC transfer date. But Petitioner has not cited any legal authority showing that BOP officials were required to conduct any personal interview, or ask him any questions at all. Nothing in the five criteria listed in § 3621(b) suggests that the BOP must conduct an in-depth personal interview with a prisoner when determining his RRC transfer date. It appears to the Court that the BOP could have fully satisfied all applicable legal requirements by conducting a completely internal RRC assessment, without soliciting any personal input directly from Petitioner himself.

Petitioner's 'lack of good faith' argument is equally unavailing. Petitioner evidently believes that the Court must accept his bare allegation that the BOP did not act in good faith, unless the BOP affirmatively disproves the allegation. (See Memorandum Of Law In Reply To Respondent's Response," [Docket No. 17], p. 2.) But that is not how habeas corpus litigation works. In § 2241 habeas corpus cases, "[t]he burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009). See also Coloma v. Holder, 445 F.3d 1282, 1284 (11th Cir. 2006) ("'A petitioner has the burden of establishing his right to federal habeas relief'") (quoting Romine v. Head, 253 F.3d 1282, 1284 (11th Cir. 2001)). Thus, if Petitioner believes that his RRC transfer date should be invalidated due to lack of good faith, he has the burden of proving that proposition. Petitioner cannot satisfy his burden of proof by

6

offering only a vague and conclusory assertion that the BOP did not act in good faith when conducting his RRC evaluation. See Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir. 1987) ("In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim. Mere conclusory allegations will not suffice."), cert. denied, 484 U.S. 1074 (1988).

Petitioner also contends that he should have been given an earlier RRC transfer date, because he tried to complete a BOP drug rehabilitation program, but the BOP allegedly impeded his efforts. (Petition, Attachment, p. 1, ¶ 3.) According to Petitioner, a BOP "Program Statement" indicates that prison officials are "'strongly encouraged to consider granting maximum RRC placement' upon successful completion" of an approved drug rehabilitation program. (Id.) Petitioner does not contend that he actually completed any drug rehabilitation program. Instead, he contends that he should have been given "maximum RRC placement" simply because he tried to get into such a program, but the BOP allegedly refused to cooperate. (Id.) This argument is belied by the record.

The record shows that Petitioner voluntarily "withdrew" from a BOP Residential Drug Abuse Program in January 2010, (Kinyon Decl., Attachment 5, pp. 3-4), which was shortly before the BOP completed its evaluation of his RRC transfer date. It appears that Petitioner was later enrolled in a different Nonresidential Drug Abuse Program, but he was expelled from that program in June 2010 "for having unexcused absences." (Id., p. 5.) In sum, nothing in the record shows that the BOP wrongly prevented Petitioner from completing a BOP drug rehabilitation program that would have made him eligible for a maximum RRC placement. (Moreover, nothing in the record shows that Petitioner actually would have received a maximum RRC placement even if he had successfully completed

a drug rehabilitation program.)

Petitioner's current habeas corpus petition lists several other grounds for relief that warrant only brief attention. In "Ground Two," Petitioner contends that the BOP's policy for determining an inmate's RRC transfer date "is illegal and violates the Administrative Procedures Act ("APA"), 5 U.S.C. § 553, because it was not published or made available for public [c]omment and it is being applied to inmates in an arbitrary and capricious manner." (Petition, Attachment, p. 2.) The first part of this argument, (that the BOP failed to comply with the APA), does not support Petitioner's request for an expedited RRC transfer date, because even if the BOP did not comply with the APA, (a proposition that Petitioner has made no effort to substantiate), Petitioner has failed to explain why that error supposedly would entitle him to an earlier RRC transfer date. Even if the BOP did not abide by the APA when it promulgated its policy, the BOP's evaluation of Petitioner's RRC transfer date still met the relevant statutory requirements. The second half of Petitioner's argument – that the BOP is applying its RRC evaluation policy "in an arbitrary and capricious manner" – is just another unsupported conclusory assertion. As discussed above, Petitioner has the burden of proving that he is entitled to habeas corpus relief, and he cannot satisfy that burden by offering only conclusory arguments.

In "Ground Three," Petitioner claims that "[t]he BOP's application of policy placing inmates into RRC is illegal and violates the Ex Post Facto clause of the United States Constitution." (Petition, Attachment, p. 3.) This argument suffers from the same flaws found in Ground Two: (1) the argument is wholly conclusory; and (2) even if the argument were somehow sustainable, (i.e., even if the policy at issue were unconstitutional), Petitioner has failed to explain why he would then be entitled to an earlier RRC transfer

date.

In "Ground Four," Petitioner contends that he was wrongly disciplined for complaining about his RRC transfer date. This argument obviously has nothing to do with the validity of Petitioner's RRC transfer date per se. (Petitioner cannot argue that his RRC transfer date must be erroneous, simply because he was disciplined for complaining about it.) As far as the Court can tell, Petitioner is seeking (in Ground Four) to overturn his disciplinary sanctions. However, those sanctions affected only the conditions of Petitioner's confinement, not the duration of his confinement, and thus, (as Respondent has correctly pointed out), Petitioner cannot challenge those sanctions in a habeas corpus proceeding. See Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) ("[i]f the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy"); Taylor v. Roal, Civil No. 10-3588 (PJS/JJG), (D.Minn. 2010), 2010 WL 4628634 at *5 ("[t]his Court agrees with the majority view that a prisoner who challenges the constitutionality of the conditions of his confinement – and who does not challenge the fact or duration of that confinement – must bring his challenge through a traditional civil-rights action (such as a Bivens action or a § 1983 action) and not through a habeas petition").

Finally, in "Ground Five," Petitioner argues that "the BOP's application of policy placing inmates into RRC" violates Petitioner's "constitutional right to due process... by creating atypical and significant hardships from normal prison life." (Petition, Attachment, p. 3.) This last argument, like Grounds Two and Three discussed above, is just a conclusory assertion that is not supported by any facts or legal analysis. And again, even if Petitioner could show that there is some constitutional deficiency in the policy that was

9

used to determine his RRC transfer date, it would not necessarily follow that he should have been given an earlier RRC transfer date.

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner is not entitled to a writ of habeas corpus in this matter. He has not demonstrated that he is legally entitled to be transferred to an RRC any earlier than the date that has been determined by the BOP. The Court will therefore recommend that Petitioner's habeas corpus petition be denied, and that this action be dismissed with prejudice.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2241, (Docket No. 1), be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: March 28, 2011

                                                        s/ Arthur J. Boylan
                                                        ARTHUR J. BOYLAN
                                                        Chief United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before April 12, 2011.